UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ORION ENERGY SYSTEMS INC.,

                    Plaintiff,

        v.                                          Case No. 16-C-1250

ENERGY BANK INC. and
NEAL R. VERFUERTH,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ENERGY BANK INC.,

                    Counterclaim-Plaintiff,

        v.

ORION ENERGY SYSTEMS INC.,

                    Counterclaim-Defendant.

## DECISION ON CLAIM CONSTRUCTION

In this action for patent infringement, Plaintiff Orion Energy Systems Inc. accuses Defendant

Energy Bank Inc. of infringing its patents: U.S. Patent No. 8,337,043 (the '043 Patent) and No.

8,858,018 (the '018 Patent). The case is before the court for claim construction.

## PRELIMINARY MATTERS

Before addressing the parties' claim construction arguments, the court will address Energy

Bank's contention that Orion did not sufficiently plead facts related to infringement of all claims.

In its complaint, Orion asserts that Energy Bank infringed and will continue to infringe one or more

claims of the '043 Patent. Compl. ¶ 23, ECF No. 1. The complaint makes specific allegations that

Energy Bank infringed at least claim 16 of the '043 Patent. *Id.* ¶ 28. As to the '018 Patent, Orion alleges that Energy Bank infringed and will continue to infringe one or more claims of the '018 Patent and that it has at least infringed claim 1 of the Patent. *Id.* ¶¶ 33, 38. On June 16, 2017, two months before Energy Bank's claim construction brief was due, Orion disclosed to Energy Bank that it asserted claims 9 11 and 14 20 of the '043 Patent and claims 1 5, 8 13, 17 26, and 32 36 of the '018 Patent.

Energy Bank argues that because Orion pleaded infringement of only claim 16 of the '043 Patent and claim 1 of the '018 Patent in its complaint, it must be prevented from attempting to litigate other claims from those patents. Citing *Oil-Dri Corp. of America v. Nestle Purina*, No. 15-cv-1067, 2017 WL 1197096 (N.D. Ill. Mar. 31, 2017), Energy Bank contends that "it is not possible to satisfy accepted pleading standards of infringement of other patent claims by providing allegations as to infringement of only one patent claim if the claims are materially different." Def.'s Sur-reply Br. at 2, ECF No. 62.

In *Oil-Dri*, the court dismissed many of the plaintiff's infringement claims without prejudice because it failed "to plead sufficient facts supporting [its] infringement allegations with respect to each asserted patent claim." *Id.* at *5. While the court noted that the plaintiff's complaint only made specific allegations regarding infringement of claim 1, this claim did not include the same limitations included in the other claims it later asserted. The court concluded that a plaintiff should not be able to plead infringement as to one patent claim then proceed in the litigation asserting claims that are materially different than the one asserted in the complaint. *Id.* at *4. It explained, "Such a result sidesteps *Twombly* and *Iqbal*'s plausibility requirements, up-ends the notice-pleading requirements that remain in place post-*Twombly*, subjects the defendant to potentially unnecessary and

unwarranted discovery costs, and wastes judicial resources by preventing Rule 12(b)(6) motions from narrowing the focus of the case to issues for which the plaintiff has shown it has a plausible chance of success." *Id.* at *5. A number of other courts have come to the same conclusion. *See, e.g.*, *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2017 WL 568781 (E.D. La. Feb. 13, 2017) (concluding that "simply putting defendants on notice that their product allegedly infringes at least one of the claims within WWCS's patents, without more, does not satisfy the plausibility standard"); *Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-cv-60695-GAYLES, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016) (noting that although plaintiffs' complaint addressed elements of claim 1 of patent, they were "required to put forth facts that, at the very least allow the Court to make a reasonable inference that the Defendants have infringed on claims 2 and 3"); *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661 JLS (BGS), 2016 WL 6834024, at *5 n.3 (S.D. Cal. Nov. 21, 2016) ("while under *Twombly* a patentee need only plausibly allege direct infringement of one asserted claim for its *complaint* to survive a motion to dismiss, a patentee must plausibly allege direct infringement as to all asserted claims in its complaint in order for *those asserted claims* to likewise survive a motion to dismiss" (emphasis in original)).

Conversely, Orion relies on cases which have concluded that a plaintiff is only required to plead sufficient facts to make a showing that it is plausible that every limitation of at least *one* claim of the asserted patent is met by the accused product. *See, e.g.*, *Iron Gate Security, Inc. v. Lowe's Cos., Inc.*, No. 15-8814 (SAS), 2016 WL 1070853, at *3 (S.D.N.Y. Mar. 16, 2016) ("A plaintiff is not required to list which of the claims in the patent have been infringed in its pleading; as the Federal Circuit has recently reiterated, 'a plaintiff need not even identify which claims are being infringed.'" (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d

1323, 1334  35 (Fed. Cir. 2012)); *Semcon IP Inc. v. Huawei Device USA Inc.*, No. 2:16-cv-00437-JRG-RSP (E.D. Tex. Feb. 21, 2017), *report and recommendation adopted*, No. 2:16-CV-437-JRG-RSP, 2017 WL 1001286 (E.D. Tex. Mar. 15, 2017); *see also Cont'l Circuits, LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116 (D. Ariz. Feb. 21, 2017); *CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-cv-859-RCJ-VCF, 2017 WL 662489 (D. Nev. Feb. 17, 2017); *Solocron Educ., LLC v. Healthstream, Inc.*, No. 2:16-cv-16-JRG, 2016 WL 9137458 (E.D. Tex. June 7, 2016).

The holdings in this latter line of cases  that a party need not plead facts supporting infringement allegations for each asserted claim   seem to comport with the pleading standards set forth in *Twombly* and *Iqbal*. After all, *Twombly* and *Iqbal* sought to prevent plaintiffs from filing lawsuits based on claims that are merely conceivable or possible and then forcing the defendant to expend time and resources to allow the plaintiff to discover their way into a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007) ("Because the plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). The "plausibility" standard articulated in *Twombly*, however, is not akin to a "probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the alleged conduct. *Twombly*, 550 U.S. at 556; *see also Bill of Lading*, 681 F.3d at 1341 ("[The defendant] is essentially arguing that, at the pleading stage, [the plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable. But that is not what is required."). Requiring plaintiffs to allege infringement of all

4

asserted claims would be contrary to the spirit of Rules 1 and 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . . They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also Solocron Educ., LLC*, 2016 WL 9137458, at *2 (declining to "infuse Federal Rule of Civil Procedure 8(a)'s well-established pleading standard with such a heightened burden at the initial pleading stage"). It would also necessitate unduly detailed complaints or, alternatively, repeated amendments as discovery disclosed that the accused product infringed other claims as well as those originally asserted. This is not what the *Twombly/Iqbal* standard or the Federal Rules contemplate or require. Accordingly, a complaint alleging patent infringement must merely include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Orion has met this standard. Its complaint sufficiently alleges plausible infringement claims of the '043 and '018 Patents against Energy Bank. Two months before Energy Bank's claim construction brief was due, Orion disclosed its asserted claims to Energy Bank. Orion has given Energy Bank "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Twombly*, 550 U.S. at 555. Energy Bank has not shown that it has been prejudiced by the fact that Orion did not allege all of the asserted claims in its complaint. In sum, the court finds that Orion may proceed on all of its asserted claims. The court will now turn to the parties' claim construction arguments.

## LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION

A patent includes both a written description of the invention and claims. The written description, which usually includes figures, is often referred to as the "specification" of the patent.

The specification ends with one or more numbered sentences that are the patent's "claims." These claims describe the invention and set forth the metes and bounds of the patent.

Claim construction is an issue of law for the court. If a material issue in the case, such as infringement or validity, involves a dispute about the meaning of certain claim language, the court needs to construe that disputed claim language. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970 71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The only claim language that needs to be construed is the language "in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

Claim construction begins with and focuses on the words of the claim. *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 20 (Fed. Cir. 1995). How a person of ordinary skill in the art understands those claim terms provides an objective baseline for claim construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 13 (Fed. Cir. 2005) (en banc). In attempting to determine the meaning of disputed claim language, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314. "Those sources include the words of the claims themselves, the remainder of the specifications, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (internal quotation marks omitted). Extrinsic evidence includes sources such as the testimony of experts and knowledgeable technical witnesses, dictionaries, and learned treaties. *Id.* at 1317 18. Extrinsic evidence is "less significant" and "less reliable" than the intrinsic record in determining the meaning of the claim language. *Id.* Thus, to the extent that the court considers extrinsic evidence,

it does so in the context of the intrinsic evidence and is cognizant of "the flaws inherent" in such evidence. *Id.* at 1319.

"The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims" and is not limited "to his preferred embodiment" and the court will not "import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (cautioning "against confining the claims to [preferred] embodiments"). Even where "a patent describes only a single embodiment, the claims should not be construed as limited to that embodiment" absent a clear disavowal of claim scope. *Phillips*, 415 F.3d at 1323; *see also Linear Tech Corp. v. ITC*, 566 F.3d 1049, 1057 58 (Fed. Cir. 2009) (explaining that it is improper to limit a claim to embodiments described in the specification where "there is no clear intention to limit the claim scope").

The court may also consider the patent's prosecution history, including reexamination proceedings. *Phillips*, 415 F.3d at 1317. The prosecution history, which is part of the "intrinsic evidence," consists of the "complete record of the proceedings before the USPTO and includes the prior art cited during the examination of the patent." *Id.* "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* The prosecution history includes any arguments or amendments made by the applicant in securing patent rights and these arguments and amendments may be considered during the claim construction process. *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). The correct claim construction must be consistent with the arguments the applicant made to overcome a prior art rejection. *See id.*

# CLAIM CONSTRUCTION AND ANALYSIS

The '043 and '018 Patents, both entitled "Modular Light Fixture with Power Pack," relate to modular power input connectors for light fixtures. The parties have disputes over certain terms in the patents, as will be discussed below.

## A. The '043 Patent

### 1. "Preassembled"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| preassembled | Plain and ordinary meaning<br><br>*Alternatively*: something that is assembled beforehand | Assembled at a factory | Plain and ordinary meaning |

The term "preassembled" appears in claim 16 of the '043 Patent. Orion argues that no construction is necessary for this phrase, while Energy Bank asserts that it means "assembled at a factory." For support, Energy Bank cites to intrinsic evidence in the specification, which indicates, for example, that "the light fixtures may be preassembled at a factory with a socket (or plug) portion of the connector within the ballast cover, and then shipped to the building, installed at the appropriate locations in the building, and then electrically connected . . . ." '043 Patent col. 11 ll. 15 19. Yet, as Orion contends, limitations from examples in the specification cannot be used to rewrite claim language. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims; we do not redefine words."); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1218 (Fed. Cir. 2014) ("Although the claims must be read in light of the specification, it is important that we avoid importing limitations

from the specification into the claims." (internal citation and quotation omitted)). Tellingly, the language Energy Bank relies upon follows the phrase "in one embodiment," which demonstrates that the specification is merely giving an example, rather than limiting or redefining the term itself. In short, I will give this term its plain and ordinary meaning.

## 2. "Light Fixture"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| light fixture | Plain and ordinary meaning | Light fixture driven by a ballast | Plain and ordinary meaning |

Claims 9 through 11, 14 through 16, and 19 of the '043 Patent use the term "light fixture." Energy Bank argues that the term "light fixture" in the '043 Patent refers to a "light fixture driven by a ballast," as supported by the intrinsic evidence. Def.'s Resp. Br. at 13, ECF No. 52. Orion argues that the phrase needs no special interpretation and stands on its own.

Energy Bank's proposed construction reads limitations from the specification into the claim. The specification explicitly states, "It should be noted that the present invention can be employed with other fixtures, and the invention is not limited to the light fixture shown and described herein." '043 Patent col. 7 ll. 11 18. Moreover, this limitation does not exist in the claim language. For example, claim 1 of the '043 Patent reads in pertinent part: "A light fixture comprising . . . a cover provided over at least one ballast, the ballast output wiring, and the power input wiring, wherein the cover is coupled to the first and second raceways and has a modular power input connector coupled thereto that is configured to allow a power cord to supply power to the light fixture without removing the cover." *Id.* col. 15 ll. 9, 25 30. However, claim 16 of the patent does not require that the light fixture include a ballast:

A method comprising: providing a preassembled light fixture, wherein the light fixture comprises a first raceway and a second raceway configured to have a power pack extending at least partially between the first and second raceway, a detachable cover provided over the power pack and extending between the first and second raceways, and a power input connector coupled to the detachable cover and configured to receive power from a power source and to direct power to the power pack, the power input connector configured to be coupled to the power source without removing the detachable cover from the light fixture; and connecting the power input connector to a power supply line electrically coupled to the power source without removing the detachable cover.

*Id.* col. 16 ll. 32 47. In short, neither the claims nor the specification in the '043 Patent restrict the meaning of "light fixture" in the way Energy Bank suggests. Accordingly, I will give the term its plain meaning.

**3. "Power Pack"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| power pack | Plain and ordinary meaning<br><br>*Alternatively*: a unit that supplies power to a device | A ballast channel cover, one or more ballasts, power input wiring, a modular power input connector, ballast output wiring, and a modular ballast output connector | Plain and ordinary meaning |

The term "power pack" arises in claims 16 and 19 of the '043 Patent. Orion argues that the term should be given its plain and ordinary meaning because it is well understood by those in the art to mean "a unit that supplies power to a device in this case, a lighting fixture." Pl.'s Br. at 15, ECF No. 47. Energy Bank argues that Orion's construction is overly broad and unsupported by the patent specification, and instead asserts that its own construction is better supported by the intrinsic evidence.

10

Yet, Energy Bank's proposed construction improperly reads limitations from the specification into the claim. Although the specification states, "As perhaps best shown in FIG. 4, the detachable power pack of the light fixture preferably includes a ballast channel cover, one or more ballasts, power input wiring, a modular power input connector, ballast output wiring, and a modular ballast output connector," '043 Patent col. 5 ll. 21 25, it does not indicate that Orion intended to limit the claims to the preferred embodiment depicted in Figure 4. Rather, the specification instructs that all examples are nonlimiting. *See id.* col. 14 ll. 14 22 ("[I]t is to be understood that the invention is not limited in its application to the details of construction and the arrangement of components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments and of being practiced or of being carried out in various ways."). The meaning of the term "power pack," read in the context in which it appears, is apparent. Therefore, no construction is needed for this term.

### 4. "Extending at least partially between"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| extending at least partially between | Plain and ordinary meaning<br><br>*Alternatively*: extending at least in part between | Extending within a space separating | Plain and ordinary meaning |

The phrase "extending at least partially between" appears in claim 16 of the '043 Patent. Orion asserts that no construction is necessary for this phrase, or alternatively, that "extending at least partially between" should be defined as "extending, at least in part, between." Pl.'s Reply Br. at 12, ECF No. 58. Energy Bank argues that "between" means "the space separating." It further

argues that "extending at least partially between" should be construed differently than "extending between" so as not to render "at least partially" mere surplusage. Def.'s Resp. Br. at 16 17. But Energy Bank's proposed construction does not appear anywhere in the claim language or the specification and may unnecessarily create confusion. The difference between "at least partially between" and "between" is sufficiently clear from the claim language itself. Accordingly, the court gives the phrase "extending at least partially between" its plain meaning.

### 5. "Detachable"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| detachable | Plain and ordinary meaning<br><br>*Alternatively*: something that can be removed or separated | Removable without the use of tools | Plain and ordinary meaning |

Claims 9, 11, 14, 16, 18, and 19 of the '043 Patent use the term "detachable." Orion contends that the term should be given its plain and ordinary meaning. Energy Bank argues that the specification and prosecution history indicate a clear intent to disclaim other ways of removing an object and limit the definition of "detachable" to "removable without the use of tools."

Energy Bank's argument is based on the claim language and prosecution history of U.S. Patent No. 7,575,338, issued from the original nonprovisional application in the patent family of the '043 Patent. During the prosecution of the '338 Patent, the patent examiner rejected then-pending claims 1, 3, 4, and 6 through 11 as being anticipated by Elam et al. (U.S. Patent No. 6,979,097). The examiner observed, "Regarding claim 9, Elam discloses a light fixture wherein the ballast channel cover is adapted to engage with ballast channel cover without the use of tools." ECF No. 52-7 at 5. In Orion's summary remarks responding to the examiner's observations, it noted

the power module [in Elam] does not appear to attach to the support module without the use of tools; power module is shown to include tabs (or the like   see Figures 1, 4, 5, and 6) along only one side, and holes on the remaining three sides appear to be adapted to receive conventional fasteners (e.g. screws, etc.).

Accordingly, Elam et al. actually teaches away from certain advantageous features of the present invention, including the ability to conveniently remove and replace ballast components "without interference from the suspension hardware . . . ."

ECF No. 52-8 at 11  12.  In Energy Bank's view, these remarks illustrate the patentee's intent to limit the meaning of "detachable" to "removable without the use of tools" and are a clear disavowal of all other ways to remove components.  Orion asserts that its remarks to the patent examiner referred to a distinction between Elam and claim 9 of the patent application.  It argues that claim 9 was the only claim that used the phrase "without the use of tools," and that this distinction was not argued for the other claims, which just recited the word "detachable."

Prosecution disclaimer only occurs where the applicant makes "clear" and "unmistakable" arguments limiting the meaning of a claim term.  *SanDisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1286  87 (Fed. Cir. 2005).  The fact that claim 9 is the only claim in the patent to include the "without the use of tools" limitation cautions against holding this limitation applicable to the remaining claims.  *See, e.g.*, *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) (noting that importing a different limitation into a claim "improperly discounts substantive differences between the claims").  The court concludes that any disclaimer on the part of Orion in the '338 Patent is far from "clear and unmistakable" and accordingly will not limit the meaning of "detachable" in the patents in the instant case.

In addition, the '043 Patent specification does not support Energy Bank's proposed construction.  The specification instructs: "As perhaps best shown in FIG 4 . . . [t]he detachable power pack is preferably detachable from the light fixture body without the use of tools, and without

any interference from the suspension hardware." '043 Patent col. 5 ll. 25 28. However, the specification later indicates that "[t]he clips provide an interference or frictional fit that preferably can be separated without the use of tools. However, this is not required, and other means, such as screws, could be used to detachably attach the detachable power pack to the fixture body." *Id.* col. 5 ll. 37 39; *see also id.* col. 14 ll. 64 col. 15 ll. 2 ("The components of the invention may be mounted to each other in a variety of ways as known to those skilled in the art. As used in this disclosure and in the claims, the terms mount and attach included embed, glue, join, unite, connect, associate, hang, hold, affix, fasten, bind, paste, secure, bold, screw, rivet, solder, weld, and other like terms."). The meaning of the term "detachable" is apparent. Therefore, no construction is needed for this term.

## 6. "Provided over the power pack and extending between" and "a power pack extending between the first and second raceways"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| provided over the power back and extending between | Plain and ordinary meaning<br><br>*Alternatively*: to overlay or envelop the power pack and to be arranged in a given direction occurring in the area defined by the two raceways at either end | Disposed over the power pack and spanning the space separating and within the space separating | Plain and ordinary meaning |

The phrase "provided over the power pack and extending between" appears in claim 16 of the '043 Patent. The parties' dispute focuses on the definition of "extending between." Energy Bank defines "between" as "the space separating and extending within the space separating." Orion argues that the phrase should be given its plain and ordinary meaning. The court concludes that the ordinary and customary meaning of "between" is readily understandable. *See O2 Micro Int'l Ltd.*

*v. Beyond Innovation Tech Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." (citations omitted)); *Encap LLC v. Oldcastle Retail Inc.*, No. 11-C-808, 2012 WL 2339095, at *9 (E.D. Wis. June 19, 2012) ("Claim construction is not intended to allow for needless substitution of more complicated language for terms easily understood by a lay jury." (citation omitted)). In sum, no construction is necessary for this phrase.

**7. "A power input connector coupled to the detachable cover" and "a modular power input connector coupled to the power pack"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| a power input connector coupled to the detachable cover | Plain and ordinary meaning<br><br>*Alternatively*: a power input connector directly or indirectly connected or joined together with the detachable cover | A power input connector directly mechanically coupled to the detachable cover | Plain and ordinary meaning |

Claim 16 of the '043 Patent contains the phrase "a power input connector coupled to the detachable cover." Energy Bank's proposed construction reads limitations from the specification into the claims. Indeed, the specification indicates that "[t]he ballast channel cover preferably includes a power line connector aperture adapted to receive a modular power input connector," '043 Patent col. 5 ll. 40 42, and "the modular power input connecter preferably extends through the aperture for connection to a modular power cord assembly." *Id.* col. 5 ll. 19 21. Energy Bank asserts that, based on this language, the power input connector must be "directly mechanically" coupled to the detachable cover or power back. But the specification also explicitly states

the terms "mounted," "connected," "supported," and "coupled" are used broadly and encompass both direct and indirect mounting, connecting, supporting, and coupling. Further, "connected" and "coupled" are not restricted to physical or mechanical connections or couplings, and can include electrical connections or couplings, whether direct or indirect.

*Id.* col. 14 ll. 26 32.  Again, neither the claims nor the specification restrict the meaning of this phrase in the way Energy Bank proposes.  Therefore, the court gives this phrase its plain meaning.

### 8. "Electrically Coupled To"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| electrically coupled to | Plain and ordinary meaning<br><br>*Alternatively*: directly or indirectly connected to permit the transmission of electricity | Energized by | Directly or indirectly connected to permit the transmission of electricity |

The phrase "electrically coupled to" appears in claims 9, 10, and 16 of the '043 Patent. Orion argues that no construction is necessary for this phrase, or alternatively, that "electrically coupled to" should be defined as "directly or indirectly connected to permit the transmission of electricity."  Conversely, Energy Bank asserts that the phrase should be defined as "energized by" because the claims state that the power supply line is electrically coupled to the power source, not configured to be coupled to the source.  Def.'s Br. at 25.  In response, Orion contends that electricity need not be present for the objects to be electrically coupled.  Energy Bank offers no meaningful support so as to limit the items "electrically coupled" to one another to be consistently energized.  The specification of the '043 Patent contemplates that objects remain electrically coupled, even if the light fixture is turned off, stopping the flow of electricity.  *See* '043 Patent col. 13 ll. 29 32.  It thus follows that the meaning of "electrically coupled" is broader than merely

"energized by." One of ordinary skill in the art would understand "electrically coupled" to mean "directly or indirectly connected to permit the transmission of electricity." Accordingly, the court construes "electrically coupled" to mean "directly or indirectly connected to permit the transmission of electricity."

## B. The '018 Patent

### 1. "Preassembled"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| preassembled | Plain and ordinary meaning<br><br>*Alternatively*: something that is assembled beforehand | Assembled at a factory | Plain and ordinary meaning |

The term "preassembled" appears in claim 32 of the '018 Patent. The parties do not suggest there is any reason to treat the term "preassembled" any differently in the '018 Patent than how it was construed in the '043 Patent. For the same reasons listed above, the court will accordingly give "preassembled" its plain and ordinary meaning.

### 2. "Light Fixture"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| light fixture | Plain and ordinary meaning | Light fixture driven by a ballast | Plain and ordinary meaning |

Claims 1 through 5, 8 through 13, 17 through 26, 32, and 35 of the '018 Patent use the term "light fixture." Again, the parties do not suggest that "light fixture" should be construed differently than it was in the '043 Patent. Therefore, for the reasons provided above, the court gives the term its plain meaning.

### 3. "Power Pack"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| power pack | Plain and ordinary meaning<br><br>*Alternatively*: a unit that supplies power to a device | A ballast channel cover, one or more ballasts, power input wiring, a modular power input connector, ballast output wiring, and a modular ballast output connector | Plain and ordinary meaning |

The term "power pack" arises in 1, 9, 10, 12, 17, 32, and 35 of the '018 Patent. Neither party suggests that the term should be construed in a different manner in the '018 Patent as compared to the '043 Patent. Accordingly, the court finds that no construction is needed for this term, for the same reasons as listed above.

### 4. "Extending at least partially between"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| extending at least partially between | Plain and ordinary meaning<br><br>*Alternatively*: extending at least in part between | Extending within a space separating | Plain and ordinary meaning |

The phrase "extending at least partially between" appears in claim 32 of the '018 Patent. Believing claim 32 of the '018 Patent was not properly in suit because it was not alleged in the complaint, Energy Bank did not provide a proposed construction for this phrase with respect to the '018 Patent. It indicated that "if Orion is successful in asserting any other claims, Energy Bank will provide claim terms and proposed constructions thereafter." ECF No. 58-1 at 2. For the reasons

stated above, the court concludes that Orion has sufficiently provided Energy Bank with adequate notice that it is asserting claims 9  11 and 14  20 of the '043 Patent and claims 1  5, 8  13, 17  26, and 32  36 of the '018 Patent, and thus, it may proceed on these claims. Nevertheless, the court will entertain a motion for reconsideration with respect to claims unaddressed by Energy Bank. But for now, for the reasons described above, the court gives the phrase "extending at least partially between" its plain meaning.

### 5. "Detachable"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| detachable | Plain and ordinary meaning<br><br>*Alternatively*: something that can be removed or separated | Removable without the use of tools | Plain and ordinary meaning |

Claims 1, 2, 3, 9, 17, 24, 32, 34, and 35 of the '018 Patent use the term "detachable." As in the '043 Patent, I am not convinced that "detachable" means "removable without the use of tools," as Energy Bank suggests. For the reasons listed with respect to the '043 Patent, the meaning of this phrase is apparent, and no construction is necessary.

### 6. "Provided over the power pack and extending between" and "a power pack extending between the first and second raceways"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| a power pack extending between the first and second raceways | Plain and ordinary meaning<br><br>*Alternatively*: to overlay or envelop the power pack and to be arranged in a given direction occurring in the area defined by the two raceways at either end | A power pack spanning the space separating and extending within the space separating the first and second raceways | Plain and ordinary meaning |

19

The phrase "a power pack extending between the first and second raceways" arises in claim 1 of the '018 Patent. Just as with "a power input connector coupled to the detachable cover" in the '043 Patent, the parties' disagree as to the meaning of "extending between." Again, the court finds that the ordinary and customary meaning of "between" is readily understandable, and no construction is necessary.

**7. "A power input connector coupled to the detachable cover" and "a modular power input connector coupled to the power pack"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| a power input connector coupled to the detachable cover | Plain and ordinary meaning<br><br>*Alternatively*: a power input connector directly or indirectly connected or joined together with the detachable cover | A power input connector directly mechanically coupled to the detachable cover | Plain and ordinary meaning |
| a modular power input connector coupled to the power pack | Plain and ordinary meaning | A modular power input connector directly mechanically coupled to the detachable cover | Plain and ordinary meaning |

Claim 32 of the '018 Patent contains the phrase "a power input connector coupled to the detachable cover," and claim 1 of the '018 Patent contains the phrase "a modular connector coupled to the power pack." Again, Energy Bank asserts that the power input connecter must be "directly mechanically" coupled to the detachable cover or power pack, because this construction is supported by the intrinsic evidence. But just as with the '043 Patent, Energy Bank's proposed construction reads limitations from the specification into the claims. The specification in the '018 Patent instructs:

> The terms "mounted," "connected," "supported," and "coupled" are used broadly
> and encompass both direct and indirect mounting, connecting, supporting, and

20

coupling.  Further, "connected" and "coupled" are not restricted to physical or mechanical connections or couplings, and can include electrical connections to couplings, whether direct or indirect.

'018 Patent col. 18 ll. 24  30.  The claims and specification do not restrict the meaning of these phrases in the way Energy Bank suggests.  Accordingly, the court gives these phrases their plain meaning.

### 8. "Electrically Coupled To"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| electrically coupled to | Plain and ordinary meaning<br><br>*Alternatively*: directly or indirectly connected to permit the transmission of electricity | Energized by | Directly or indirectly connected to permit the transmission of electricity |

The phrase "electrically coupled to" appears in claims 1 and 32 of the '018 Patent.  The parties do not argue for a different reading of this term and accordingly I will adopt the same construction of the term as used in the '043 Patent: "directly or indirectly connected to permit the transmission of electricity."

### 9. "Configured to receive power for the light fixture" and "configured to allow a power cord to supply power to the light fixture"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| configured to receive power for the light fixture | Plain and ordinary meaning | Configured to receive power without intervening structure on the light fixture | Plain and ordinary meaning |

21

| configured to allow a power cord to supply power to the light fixture | Plain and ordinary meaning | Configured to connect to a power cord without intervening structure on the light fixture | Plain and ordinary meaning |
|---|---|---|---|

Claim 1 of the '018 Patent contains the phrases "configured to receive power for the light fixture" and "configured to allow a power cord to supply power to the light fixture." Energy Bank proposes that "configured to receive power for the light fixture" means "configured to receive power without intervening structure on the light fixture" and that "configured to allow a power cord to supply power to the light fixture" means "configured to connect to a power cord without intervening structure on the light fixture." It contends that because claim 1 of the '018 Patent does not require any cooperation between the modular power input connector and the power input wiring, its proposed construction provides clarity to the claim and links the two elements together.

However, Energy Bank unnecessarily adds words that change the meaning of the phrase and offers no support for their use. The court finds that the specification and claim do not support Energy Bank's proffered construction, as the phrase "without intervening structure" is no where in the specification or claim language. *See Source Vagabond Sys. Ltd. v. Hydrapak, Ltd.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) ("[A]n analysis that adds words to the claim language without support in the intrinsic evidence . . . does not follow the standard canons of claim construction." (quotation marks and alterations omitted)). To the contrary, the plain and ordinary meaning of those phrases, as used in the claim, would be understandable to those skilled in the art. Accordingly, no construction is necessary.

## 10. "Driver"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| driver | Plain and ordinary meaning<br><br>*Alternatively*: an electronic component used to control another component | Power supply to drive LEDs | An electronic component used to control another component |

Claims 1, 10, 12, 13, 25, 26, and 32 of the '018 Patent include the term "driver." Energy Bank asserts that Orion's dictionary-supported construction   an electronic component used to control another component   is overly broad. Instead, it argues that "driver" should be limited to mean "a power supply to drive LEDs" because it is supported by the claim language and specification.

A careful reading of the entire patent, however, makes clear that drivers are not limited to driving LEDs. While claim 1 of the '018 Patent specifically claims a light fixture comprising a plurality of light emitting diodes (LEDs), '018 Patent col. 19 ll. 10, 16, claim 17 reads in pertinent part: "A light fixture comprising . . . a plurality of lighting elements arranged in a linear spaced-apart manner between the first and second raceways and coupled to the power supply . . . ." *Id.* col. 20 ll. 20, 28  30. Claim 25 continues, "The light fixture of claim 17, wherein the power supply is a driver." *Id.* col. 20 ll. 57  58. Simply put, the language in claims 17 and 25 conveys that the driver element in claim 25 drives not only LEDs but other "lighting elements." Moreover, the specification states:

> The detachable power pack of the light fixture includes a cover and one or more power supplies (referred to in the following description as "drivers" since they are

23

associated with LEDs in this embodiment, although it should be understood that other types of power supplied may be used according to other exemplary embodiments) provided in a channel (e.g., a driver channel).

*Id.* col. 17 ll. 22‑28.  In short, there is no indication from either the claim language or the specification that Orion intended to limit drivers to drive only LEDs.  But to provide clarity, the court construes "driver" to mean "an electronic component used to control another component."  This construction is based on the plain meaning of the term and is supported by the specification.

**11. "Provided Substantially Over"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| provided substantially over | Plain and ordinary meaning<br><br>*Alternatively*: provided substantially above | Disposed in an overlaying relationship | Disposed in an overlaying relationship |

The phrase "provided substantially over" appears in claim 1 of the '018 Patent.  Claim 1 reads in pertinent part:

> A light fixture comprising . . . a power pack extending between the first and second raceways, herein the power pack includes at least one driver configured to be electrically coupled to the plurality of LEDs, power input wiring that is configured to receive power for the light fixture, and a detachable cover provided substantially over the at least one driver and the power input wiring . . . .

'018 Patent col. 19 ll. 10, 21‑27.  Orion argues that no construction is necessary for this phrase.  It asserts that the phrase does not require vertical alignment.  At the same time, however, it argues that if the court finds that construction is necessary, the phrase should be defined as "provided substantially above."  Energy Bank contends that "above" relates only to a single dimension and does

not account for alignment. As such, it proposes that the court should define "provided substantially over" as "disposed in an overlaying relationship."

The court agrees that this language most clearly defines the spatial relationship of the cover with respect to at least one driver and the power input wiring. The term "above" merely denotes a directional, rather than a positional, alignment. Yet, neither the claim language nor the specification require that the cover be above at least one driver and the power input wiring. An object does not need to be concealed from above or the top to be covered; it can be enveloped from any side. Accordingly, "provided substantially over" is understood to mean "disposed in an overlaying relationship."

## CONCLUSION

The disputed claim language is constructed as noted in the far right hand column of each above chart for the reasons set forth above. The Clerk is directed to set the matter on the court's calendar for a telephone conference to address further scheduling.

Dated this  23rd  day of October, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court